for the second district is now open. The Honorable Justice Robert D. McLaren presiding along with Justice and B. Jorgensen and Justice George Bridges. The case is number 219 0818 People of the State of Illinois. Plaintiff happily versus Ernesto Dorado, defendant appellant arguing for the appellant John W. Heider Scheidt, arguing for the appellee Mary Beth Burns. Thank you, Mr. Heider Scheidt. You may proceed. Thank you, Your Honor. Morning, Madam Appellate Prosecutor, Clerk of the Appellate District Court, Learned Justices of the Second District Appellate Court. My name is John Heider Scheidt. I'm an attorney with Godoy Law Office and I represent Mr. Ernesto Dorado in these proceedings. I want to thank everybody for dedicating their time and attention to this matter today. You know, COVID has dealt us a lot of curveballs and changes in how we practice law, and those can be very difficult. But these matters are important to Mr. Dorado, and he and I are both grateful that everybody has taken the time and effort to hear this matter, even though we're undergoing very difficult circumstances. I find that the curves thrown by COVID offer a little parallel in this case, because in 2010, the Supreme Court of the United States threw a bit of a curveball into how criminal defense attorneys represent folks who have underlying immigration matters, as Mr. Ernesto Dorado does. Mr. Dorado is a lawful permanent resident of the United States for many years, although that residency has now expired. He's fearful of even reapplying for residency because of the conviction in this case, and the potential for him to be removed from the United States because of it. Few areas of law are more complex than the integration of immigration and state criminal law. When it comes to narcotics convictions in the immigration context, often the most harsh consequences are not felt in the state criminal courts, they're felt in the immigration courts after the fact. Mr. Dorado will find himself in that position if we're not able to vacate the conviction in this matter and withdraw his guilty plea. I provided two arguments for the court discussing why Mr. Dorado is entitled to have the conviction vacated and his plea withdrawn in this matter. The first is ineffective assistance of counsel in negotiation of the plea, and although in reverse order, the second is that the state promised him an unfulfillable promise within the context of the 410 probation statute that he pled to. Namely, the state said that he would not, as a result of finishing the case, suffer any disqualifications or disabilities under law that's codified in section 410G, the statute that the defendant was sentenced under. Unfortunately, that's an unfulfillable promise. The state is not able to shield him from any immigration disabilities or disqualifications as a matter of law on this plea agreement. The circuit court in ruling against Mr. Dorado relied heavily on a new case that came out in 2019 after the plea in this matter, and I think it's important to look at what we were asking for. We timely filed a motion to withdraw a guilty plea. Those motions can fall under discretionary review as a standard of review. When we talk about instances where constitutional rights may have been violated in the plea process, there's a much higher standard of scrutiny that the appellate court treats the circuit court's decision with. The circuit court really didn't address the 410G argument other than to say it was meritless. It based the majority of its ruling denying withdrawal on the basis of ineffective assistance of counsel on the Najera-Rodriguez decision. While the Najera-Rodriguez decision takes the conviction out of the question of aggravated felony or removability related to a controlled substance, it does not remove the analysis of removability under any of the other grounds of removability that the federal government can remove a permanent resident from the United States under. My particular concern is within the statute INA 1227, small A, numeral 2, big B, little I, little I, and that is a conviction related to this. The ground of removability is for anybody who can be shown to be a user or abuser of narcotic substances in the United States. This conviction certainly can be used under 1227, small A, numeral 2, big B, little I, little I, to establish that Mr. Dorado is addicted to opiate substances. That's not to say that I hold that belief, but on the record that's been created, the government can posit that argument and hail him into immigration court. And upon being hailed into immigration court, Mr. Dorado can be held without bond for some time while he requests relief that won't be granted to him because he's automatically removable under those grounds. And so on the basis of a conviction that no conviction had four days with credit to serve, so there is no additional custody time beyond the arrest. Mr. Dorado now faces the potential of significant custody time in immigration custody and removal from the United States if he's brought before immigration authorities. I can't think of a consequence that could be worse or more harsh in relation to a conviction that initially was supposed to leave Mr. Dorado with nothing on his record if he satisfied the conditions outlined in 410G and on the sentencing order. In terms of ineffective assistance and this kind of, there's an intertwinement here. You know, when the court advised Mr. Dorado on the plea colloquy, I think it's important first that the state said that standard terms and conditions apply in their plea colloquy. Well, 410G is a standard term and condition of 410 probation. The state made no effort to mitigate or qualify or restrict any of the benefit promised under that statute as it related to Mr. Dorado's immigration background and the potential for prejudice in his immigration cases. Mr. Dorado has lived in the United States since he was a young child. He has no formal home in Mexico. He does speak some employment to get by if he were returned home, and he would have no life to return to. His entire life is in the United States. When we look at the question of when can a plea be withdrawn, Mr. Dorado came into this court within 30 days, within the timeframe prescribed by the Supreme Court rules, and probably because he knew he wasn't getting any straight answers about how the conviction was going to affect him in terms of his immigration. You look at the testimony of Mr. Dorado's public defender when he says, well, Mr. Dorado said he'd get around this by marrying his girlfriend and getting citizenship that way. That's a legal impossibility. You get citizenship from going through the naturalization process. You cannot get citizenship alone by virtue of marriage. Although if you are married, it does speed up the process from three years to five years. There are requirements that have nothing to do with marriage to naturalize in the United States. I see that my time is my first 10 minutes is going to be coming to a close here. And I understand that the court may have questions. I just want to say that Mr. Dorado, in my opinion, did everything right in the situation that he could. He was in front of a court that told him maybe there would be consequences. He received a term of probation that said if he completed the probation, there would be no consequences, no disqualifications or disabilities under the law. And when he spoke to his public defender, his public defender told him, you're going to be out of here, but maybe there's some relief, maybe there's some discretionary relief and left him with the wrong impression that he could fix citizenship issues. I expect the state to make a lot about removability being the only issue that we need to consider here. That's not what Padilla says. Padilla said that they categorically would not, they would not remove deportation categorically from the ambit of Sixth Amendment effective council services. They didn't say, and they pushed for another day to determine other consequences. And Mr. Dorado faces a bevy, a bevy of immigration disqualifications and disabilities under law as a result of this conviction, even after he successfully completes this and the state dismisses it. I think I've only got about a minute left and I would yield that time for any additional questions that the court may have. But I would respectfully request the right to reserve the five minutes in rebuttal if necessary. Well, you'll have rebuttal in any event. Justice Bridges, do you have any questions? I do. Thank you, Justice McLaren. Mr. Hardish-Knight, can you point out what is inadequate about the court's admonishment where the court advised the defendant that his plea, and I quote, may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization? What is it about that that didn't remove any misapprehension of the law or facts about the consequences of his plea? The word may. May implies maybe, maybe not. Further, what adds to the misapprehension is the state is providing a statute of probation that references no disqualifications or disabilities. And then he's got an attorney who's telling him there are going to be the worst consequences and disabilities, but maybe there will be some relief. And so all of those things, using the word may on the judge's part specifically, where the answer is clearly will. He is removable from the United States on the basis of this conviction. It's only if the United States is not able to serve him with an MTA because they don't have the resources to do so that he would avoid judgment on that matter. And so as this court has recognized and state the, I hope I don't mispronounce the solare, you know, when you undertake the duty to advise that there are consequences, you have to get that right. And using the word may is not an accurate word in the context of a conviction that makes you auto removable under 1227. But counsel, the federal government would still have the discretion to remove him or not. So may is still appropriate at this time. As you indicated there, there is no guarantee that one would be allowed to stay or that one would be deported. It remains in the hands of the immigration division, correct? The mandatory nature of removal, the consequence naturalization, the consequence of mandatory bond, none of those are discretionary. None of those are discretionary as a result of these, of this plea. Those are mandated responses. It's the only thing that could save him is a lack of resources. It's not that the law makes it discretionary, but the government simply can't remove everybody that's removable from the United States on the budget that they have. This is a matter of law. He is auto removable and that does not comport with the word may in the admonishment. Uh, how can you say in your brief on page 13 that the court, the state and the defense counsel all ensured a defendant's application for citizenship would be denied when the court's admonishments and defense counsel all supported being the defendant's decision. He wanted to move this forward. Uh, I think the defendant, if he wanted to move it forward, wanted to move it forward because he had some confusion about what the consequence to his immigration status would be, because he was being told a couple of different things. And if I would respectfully point the court to some of the status conferences and up to, uh, the actual plea hearing in this matter, they continued this matter for a year, uh, for his attorney to advise him on the consequences of naturalization as it relates to this conviction. And for a year, and that's my point, David, from the record, it appears that they were bending over backwards, taking as much time, all of the parties to, uh, properly admonish him and advise him of the consequences of his plea. I, if perhaps we have a difference in how we read the record judge, but as I read the status records, you're doing everything they can for him to complete his naturalization application. Um, and so in my mind, that's giving you the impression that we're not trying to take naturalization away from you, but as a consequence under the code of federal regulation, any kind of controlled substance plea made it mandatory. He would not be able to naturalize after that guilty offense. Okay. And you alluded to this, uh, because immigration law is so complex and unclear regarding the consequences of a plea. They don't always know. Doesn't, uh, Adila only required defense attorneys to advise their non-citizens clients that the pending criminal charge carries risk of adverse immigration consequences and nothing more than that. As I read Padilla or Padilla, um, the majority states that there's an obligation that when the consequence is mandatory under the text of the language, you must, you must so advise. Um, and in addition, if you look at Thomas's, excuse me, not Thomas's Roberts and Alito's concurrence, they go so far as to say that there's an obligation not to misadvise as well. And I'd say there's a host of misadvisal issues from the court, from the state and from the defense attorney in this matter. Uh, thank you. Counsel. Um, thank you, just as far. I have no further questions. Thank you. Uh, justice Jorgenson, do you have any questions? I do. Um, and I'm sort of pick up where justice bridges left off. Now you find that the trial court, uh, did not accurately set forth the status for this defendant because he used the word may when the, uh, removal was mandatory. That's correct. Okay. So in this case, based on what the trial court had before it, what would you have had the trial court say? Um, if you just give me a second to, to think on that. Well, I mean, what's the trial court supposed to say? Um, you know, you, you can't really inquire before Nahara you that before their status, I think before, and I let's take this plea in the context of happening before a hair Rodriguez, I think the court has to say something akin to, um, regardless of the language and the statute and regardless, regardless of the language in the statute, you are mandatorily removable because you're pleading to an aggravated felony, which he was doing at the time of the plea inheritance come to own till after that plea agreement. So at the time he made the plea, he was auto removable on egg felony grounds too. And I think the court has to say that irregardless of, uh, any promises the state has proffered and it's look, this is four 10 probation. This is special probation. And I think the court has to say, regardless of what's been set out in the statute, uh, if you plead guilty to this, uh, according to the laws, the way it's written under the INA, you'll be. So you're suggesting that a state court trial judge has to understand and know how federal prosecutors will implement a statute and advise accordingly. Is that your position? I believe it's the same position that the seventh circuit took in usv. So to answer the question, that is your position. It is my position that every attorney in that room has a responsibility to make sure that the client, excuse me, not the client, the defendant knows and is aware of what they're pleading to and the immigration consequences that are mandatory as a result of the plea. And that's not me. Would it, would it have been, um, appropriate then? And would the takeaway from this case, if we were to rule in your favor, beef henceforth for trial judges to simply say, sir, you will be deported or ma'am. I think that, I think that would create the opposite problem because there will be situations where conviction won't lead to a mandatory deport. Um, as much as I, as a litigator love bright line rules. No, no. I mean, give me an example where it, there is not a, where you could plead to a felony, but it would not be, um, deportable, a mandatory deportable or removable offense. Uh, and that's kind of my point. You do this for a living and you're expecting a trial judge to I mean, you know, what the feds do is a moving target. How, how do we create a structure for trial judges to know what they're supposed to do? I understand the difficulty here, judge. Um, typically what I do when I'm trying to determine whether a case is auto removable or discretionary I look for the law and the circuit on that case and see what it says. Um, now what complicates matters is there's a BIA matter of Sue SUH. Um, that says that just because you're not removable under one ground, doesn't mean you're not removable under all of these grounds. And it gets back to it. And, you know, Padilla didn't make this easier for anybody, but it made it affirmative that we have to know what's going on with the consequences and immigration. And the reason for that is because the, Oh, I understand. That's not the question. We all understand the reasons behind it, but what I'm trying to get you to tell me is how far does a trial judge have to a state court judge have to go into understanding any possible removal? What if this is a negotiated plea and there's no pre-sentence report that might tip the trial judge office to some removable basis that is unrelated to a criminal history? Well, I think one easy thing is the state, the judge could look at the state and say, state, have you made sure that there is nothing in this plea that's going to lead to mandatory removal? And how would the state know that unless the defense attorney tells them? Well, I would assume the state would have its clerks and staffs and attorneys do its own research and work with the defense council and not into the defendant's background. I mean, we're setting, I think you're asking us to set up what I think is just an unreasonable standard. Well, then I'm not asking for a bright line test. When we look at these motions to withdraw clearly the case law states from the Supreme Court in this district, cited on a case by case basis, taking all the factors into account. I know that this court has recognized that the adverse immigration consequences that come as a result of a guilty are more than collateral. And that the defendant has the right to know if it's a mandated removal. In this instance, there is a mandated removal under 1227 A2B ii. There's no way around it. But isn't it clear that the defense attorney told them you will be deported? Well, that adds the extra, that adds the extra wrinkle of, of the defense attorney did not just make that statement in a vacuum. The defense attorney let him walk off thinking that he could remarry somebody and fix this issue. The defense attorney also in testimony. Where's the evidence of that? I would point to my redirect examination of Mr. Schmidt. It's page 15 of the motion to vacate hearing. And I'm reading from lines 18 to 24. This is the attorney speaking to Mr. Dorado. My colleagues said there may be some sort of immediate relief or immediate relief, temporary relief. I wasn't sure what type of relief she was talking about, but I did tell Mr. Dorado about that as well. She advised, you know, worst case scenario, if you can do the plea without mentioning the controlled substance in the actual order, um, this was the defense attorney knew that this was an issue. And for 12 months did not even, uh, provide him with a letter at the end of that 12 months is recommended by, uh, judge Hutchinson's concurrence and Karen's alum, Karen's Islama, I believe I'm pronouncing that wrong. And I'm sorry about that. So it's not just that we can't just look at the one comment he made. We have to look at this in the context of the comments, the state made the comments, the judge made and the comments the attorney made. Okay. And then my other question is, can you point to evidence of real that your client relied on, um, the statute, the state in, in the sentencing hearing stated that the standard terms and conditions of probation, the usual terms and conditions, the standard terms and conditions in the language of the statute. That's what was, that's what was negotiated for. That's what he pled to. And, you know, did he say anything on the record that I'm relying that you're going to vacate this conviction 24 months down the road? No, but he relied on it because it was on the statute. Okay. I have nothing else. Thank you. Thank you. Welcome. Uh, counsel, you mentioned that you're a Rodriguez, a 2019 seventh circuit case, which I believe indicates that it is the circuit in which this venue or this jurisdiction is located. Is that correct? It is your honor. And so if you had reviewed that case, would you have determined that under federal law, uh, the defendant would not be rendered removable based upon that decision under the controlled substances, aggravated felony ground? Yes. Well, what other ground is there that supposedly your client would, uh, not obtain the benefit of the plea? Uh, two 27, a numeral to big B little I little I the habitual user and substance user statute. Um, anybody who is deemed at any time to be a user abuser of narcotics can be removed from the United States. I would point the court to a specific case. Could I ask why you said can instead of shell or will or must or invariably or most assuredly will be removed? Because I don't know if the United States government has the financial resource to by the law. Uh, since when does final financial stability or disability or ability relate to the word can, is there anything in the statute that says, uh, if we have the money to prosecute, then you will go or you won't go? Or is there some sort of discretionary act? Uh, discretionary matter. There's no discretionary element to 12 27 little a numeral to big B little I little I. There's so you misstated, uh, and misuse the word can. It must be interpreted as must or shall. Correct? Correct. Correct. And I'm sorry for the created there. And so I listened to your responses to Justice Jorgensen's questions, and it would seem to me that based upon your conversation or your comments to my questions, then the bright line test, unless a defendant wishes to be removed, is that the judge should tell the defendant that he shall, he will, he must irrevocably presumed to be removable if he pleads to any felony. Correct. Because according to your argument to me, the section that you cited will ultimately result unless they don't have the financial ability to result in a will shall must situation. I'm I'm sorry. I'm misunderstanding that question or a little better. Well, my point is, is that you were asked by Justice Jorgensen. What would you suggest the bright line test to be? And you just told me that the section that says that you will be removed if you are a user or habitually addicted or whatever. According to your argument to us today, this is mandatory, unless there's no money to do this. Is that your? That's what I understand you to say. Are you saying that? Or are you not saying that? I'm not I'm not saying that, Judge. And perhaps I can just read the text for you. And that will clear up the confusion. Under the drug, drug abuser and addicts, any alien who is or at any time after admission has been a drug abuser, addict is deportable, end of sentence, no qualification about financial resources or any of the like. So it's a must. It's not a maybe it's not. What if it's a must? And that's my point. If it's a must, then according to your argument, the trial court should have said, you you shall be or you will be or you must be removed if you plead to this. Yes, by not doing so, it created the misapprehension and confusion that would not allow for this to be a valid guilty plea. OK. I have no further questions. Any other questions? I do. I have one additional question. I have no further. Thank you. Thank you. I do have a couple of questions. You just cited, you know, that section again under addict and drug user. Yes, I did. If the defendant were an abuser of a controlled substance, correct? Yes. But inherently in getting Section 410 probation, that doesn't mean you were an abuser. It simply means at one time and one occasion you had a controlled substance on your person. So tell me how those two equate. The I would point the court to case number. Just give if I can have a moment, Judge. Sure, sure, sure, sure. So the INA allows immigration judges to look at look beyond the record of conviction into the transcripts. And if you look at the stipulation in the plea colloquy, the stipulation of facts was that Mr. Dorado had pills that were not described him and takes them routinely. The government can take that transcript and make the case of him being a user and abuser as they did. Well, wait a minute. But my point, here's my point. This the federal prosecutor, immigration prosecutor would have to create a case. I mean, inherently that I take them routinely. There's no time limit in that transcript. How does that automatically prove up the federal immigration burden of proof? I would refer the court to case number 3 colon 18-cv-822 Salazar Dent, aka Cesar Augusto Jimenez Mendez v. William Barr, in which a immigration court in Ohio used a drug conviction from Arizona to remove the defendant under the ground that I'm referencing using only that conviction to prove overuse. So they have everything they need. But they still have to prove it up. They could lose. I guess that's technically, I guess that's technically true in the case of an aggravated felony plea as well, a plea that would be an aggravated felony under the INA. The government still has to issue an NTA and prove it up, but they're going to. Well, I think there's a difference between handing up a certified copy of conviction and having to prove up the underlying evidence. I would just again, and I'm happy to upload the site to the court file to make it easy for the courts, and I'm just providing it to show an example of this happening before. But it's happening. If I accept your arguments, then what you're saying is a trial judge must simply say to every non-citizen defendant, you will be deported, whether you will or not. But they have to say, you will be deported because you qualify under a mandatory and assume that no discretion would be exercised by immigration officials. That's correct. Okay, thanks. And I believe that's the position provided by Padilla too. Okay, done. Thanks. Thank you, Your Honor. George, any other questions? No, thank you. No further questions. Okay, thank you. Counselor, you'll have an opportunity to make rebuttal after the appellee of the state argues. Thank you, Your Honor. I'll mute myself for now. Okay. Ms. Burns, you may proceed. Good morning, Your Honors. May it please the court, my name is Mary Beth Burns, and I represent the people of the state of Illinois. We come before you this morning to respectfully ask this court to affirm the trial court's judgment in that it denied the defendant's motion to vacate his conviction and to withdraw his guilty plea. Initially, we would point out that the trial counsel testified at the motion to withdraw. And in his testimony, counsel said that he spoke with immigration attorneys, and he advised his client that in fact, he was deportable based on the conviction. I don't know that Padilla requires more. Counsel advised him that there would be likely consequences. As far as the operation of the Controlled Substances Act, the circuit court was entitled to rely on the Seventh Circuit's then recent decision in Najera Rodriguez, which said that a conviction under the same statute to which the defendant was pleading would not constitute a removable conviction. The Seventh Circuit is the highest federal court in this jurisdiction. And there's no reason to believe that a trial court in Illinois cannot rely on the Seventh Circuit's consideration of an Illinois statute in light of the Immigration and Naturalization Act. So neither trial counsel nor the trial court did anything wrong in this case. If your honors have questions, I'd be happy to respond to them now. Thank you. Justice Bridges, do you have any questions? I do. Thank you. Good morning, Ms. Burns. Good morning. Why isn't a misapprehension of law when you tell a non-citizen that his first offender 410 probation will not impose any disability or disqualification by law on him when in fact, there are a number of immigration consequences other than removal? I guess on some level, it seems to be unreasonable to construe a state statute that's talking about the normal conditions that go along with a conviction, and saying that if in fact, you succeed with this, you no longer have a conviction on your record. I think it is unreasonable to think of that as going beyond the state of Illinois. Okay, but how can you say the defendant was operating under a mis... How can you say he was not operating under a misapprehension of the law when in this case, the defense counsel, the state, and the defendant all engaged in what we can see from the record, intensive plea negotiations to preserve the defendant's immigration status, when the Federal Immigration Act at that time made it clear that such a plea to this charge made him deportable? I think that goes to the fact that trial counsel explained to him that if he took the plea, he was deportable. I don't think anyone pulled the wool over this defendant's eyes. He was advised by the trial court that there was a possibility of deportation, and he was advised by his counsel after talking to other, actually talking to immigration attorneys, that there was a danger of deportability. I believe that the record said that counsel used the word deportable. Okay. Also, how can you say the defendant received the benefit of his bargain to believe his what they call first offender probation is not a conviction, only to learn that immigration treats it as such, that it is a conviction? I guess I have two responses to that. The first one is the same, as I said before. I think it's unreasonable to take that statute outside of the standard situation where a criminal defendant successfully completes his probation, and so he no longer has a record. But the other side of this is, based on the record of the defendant, of the plea, I don't see any reason to believe that the defendant was ever told the underlying discussion of what 410 probation means, such that there's, I don't think there's any record to believe that he relied on it. And the fact that the parties continued the case for a year in hopes of helping the defendant reach a successful completion to his naturalization proceedings, I don't think has anything necessarily to do with the defendant's reliance interest on the actual underlying meaning of the statute. Thank you, Ms. Barnes. Thank you, Justice. I have no further questions. Thank you, Your Honor. Justice Jorgensen, do you have any questions? I do. Wouldn't it be simpler if we were to adopt the defendant's position and direct trial courts to simply say you will be deported, rather than you may? I don't know if it's simpler or not, because I don't think it's accurate, and I don't think truth is no state court can anticipate how federal authorities are going to view a proceeding. And after Najera Rodriguez, I have to question the applicability of other immigration statutes where the Seventh Circuit has said that a conviction of this particular controlled substance's offense is, in fact, not deportable. I think that the bright line that the defendant seeks is not going to help defendants because it's going to take defendants to trials where they're likely going to get more significant punishment than would be typically available in a negotiated guilty plea without any reason to believe that the plea is going to absolutely lead to their deportation. Well, I mean, there shouldn't be a trial tax for going to trial. But in the real world, I don't think it's trial tax. I think it's a recognition that if a defendant pleads guilty, he's already assuming responsibility for his conduct, which, in general, I think is viewed as signs of rehabilitative potential. I don't think it's a matter of a trial tax. I think it's simply a matter of recognizing that a defendant is willing to accept responsibility for what he or she did and is willing to... They may still accept responsibility for what they did, but it is the deportation consequence that makes them pursue the trial. I mean, that was your analysis. And I guess, assuming for the sake of argument that the state has enough evidence to go to trial, then if there is, in fact, a deportation consequence, it will come about with the conviction one way or the other. Okay. I don't mean to sound flippant on this, but my understanding of the facts of this case is that the defendant was pulled over for a traffic stop and the officer found the hydrocodone with... That was prescribed to somebody other than the defendant. That seems to me that it would be enough to convict him at trial as well as at a guilty plea. Okay. Okay. Thank you, Reiner. All right. I have no further questions. Thank you, Justice McClaren. Thank you, Reiner. If opposing counsel is correct, what do you think the bright line test should be? I don't think that there should be a bright line test. I think that Padilla and his progeny say the possible consequences need to be laid out for a defendant. I don't think there can be a bright line test because there isn't any way for a state court to anticipate what's going to happen. The state court can only say what can happen. The state court can present the possibility. It cannot present a certainty. Okay. If I understand your argument, it is that the bright line test should not encompass the concept that you are going to make the most egregious admonishment possible such that it will include all other permutations that might have been deemed more probable or reasonable. I don't know that it is possible to present every possible permutation. Perhaps I'm simply looking at it too narrowly, but I don't think that it is reasonable to expect either state trial practitioners or state court judges to be able to understand the entire Immigration and Naturalization Act and all of the various regulations that it encompasses. I think that all a state practitioner can do for his client is tell him the possibility. Here, defense counsel told the defendant that his conviction would render him deportable. The trial court similarly admonished the defendant of the possibility. I don't think a bright line rule works in this situation. What about in any situation? Well, again, we're basically looking at what is it that Padilla talks about. Padilla talks about a non-citizen of the United States that his plea can have consequences. I don't think that it is realistic to go beyond that. I have no further questions. Does the panel have any other questions? I do not. I do not. Thank you. Thank you, your honor. Thank you. Mr. Heiderscheidt, you may proceed with your rebuttal. Thank you, your honors. I just want to address a couple of things that were said by the state in its argument. They said that no state court can predict all of the permutations, I guess you'd say, under the Immigration and Nationality Act. And in the abstract, that may be true, but when an individual, when the court has taken jurisdiction over an individual and means to impose punishment on him, potentially including custody time, taking money, not allowing him to have the right to bear arms, etc., they've also taken on the responsibility of understanding the profile of that particular person. In terms of the bright line test, I want to be really clear here. I am not advocating a bright line test. We're here on a motion to withdraw a guilty plea under state criminal procedure law. The review for that is abuse of discretion unless constitutional rights have been violated, and then there's a stricter review that the court can employ. I think that these cases, I agree, these cases have to be taken on a case-by-case basis. It is very complex. Padilla recognizes that. A lot of the courts-to-touch orders after Padilla recognize that. In this particular context, this legal permanent resident pled guilty to a crime that made him automatically removable, and it also subjected him to a number of disqualifications and disabilities under law in direct contradiction with a promise the state made via statute at the plea. We talk about, and the state wants to talk how Mr. Dorado acknowledged his guilt. Yeah, he acknowledged his guilt after the state offered a special kind of probation, and he forfeited all of his trial rights in exchange. Plea bargains are a matter of contract. They're a specialized contract. The Supreme Court of Illinois has recognized that. I'm not convinced that this case was a really clear one, and in fact, if you want to take the position that Mehra holds and that he's not removable, well, then he was when his trial counsel testified that I told him it would only get worse if he goes forward. Well, in my mind, in terms of immigration, that's inaccurate. If he's really not removable because of this, they pulled him over on speeding. He'd never challenged consent via suppression. He had the right to do that. He never did that. His trial counsel decided not to do that for whatever reason, and the stipulation within the guilty plea, it doesn't reference a time frame in which he took pills or not, so if there was going to be really, as the state wants this court to believe, no immigration consequence or that it's so confusing that it should be ignored, well, then he should have been told that, and he could have decided, you know what? I'm going to take it to trial if there's no immigration consequence because I might get this evidence suppressed, and there was no about how or when he took pills at the time he was arrested, and beyond that, there were no field sobriety tests. If this officer really believed that he was under the influence while he was driving, there'd be field sobriety tests, too, so I don't view this as some strong case that couldn't have been beaten at trial. You know, I would point the court to what I view as a very SUH, and the case site is 23 I and N decision 626. It's a BIA case from 2003, and in that matter, an immigrant to the United States received a pardon for a crime in Georgia, and he was still removed anyways because the pardon took care of three grounds of removability but not four. There are many, many grounds of removability in the Immigration and Nationality Act, and Mr. Dorado is prejudiced under a number of them because of this plea. The state promised him that he would have no disabilities or disqualifications under law as long as he complied with this successfully. It's an unfulfillable promise, and therefore the defendant should be allowed to withdraw his plea, as happened in People v. Whitfield, an Illinois Supreme Court case that touched on unfulfillable promises in the context of MSRs. With that, I would yield my time. Justice Bridges, do you have any questions? I do not. Thank you. Thank you. Justice Jorgensen, do you have any questions? You just said that the defendant was promised no disability under this plea agreement, right? The language of 410G promises that, yes. Right. But isn't that within the confines of state law? I don't think so because it also, you know, under the same statute, they take away your gun rights. So it can't be said that that only contemplates state law. Well, the state's attorney only has jurisdiction over state laws. They only prosecute a state violation. I think Whitfield, People v. Whitfield, talks to the express a situation where a promise cannot be fulfilled, even if a different law that the prosecutor doesn't have control over makes the promise unfulfillable. The defendant is no less entitled to withdraw his guilty plea, particularly where he's made the motion timely filed and the plea infringes on constitutional rights. Okay, you are hanging your hat then on the outcome of Whitfield. I think Whitfield is an important case and similar to this one in many ways. Okay, thanks. I have nothing else. I have no further questions. Justice Bridges, do you have any questions? I do not. Thank you. Thank you. The case will be taken under advisement and at this position rendered in apt time. Mr. Clerk, you may terminate and close out the proceedings. Thank you, Your Honors.